UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
DOW JONES & COMPANY, INC.,

                                 Plaintiff,

                    -against-                                        21-cv-7284 (PKC)

                                                                     OPINION AND ORDER
JUWAI LTD.,
                                 Defendant.

-------------------------------------------------------------x

CASTEL, U.S.D.J.:

        Plaintiff Dow Jones & Company, owner of multiple news publications, brings this action against Juwai Ltd., a publisher based in China.  Dow Jones claims that Juwai illegally reproduced Dow Jones's articles on Juwai's own Chinese-language website in violation of its rights secured by the Copyright Act, 17 U.S.C. § 106, and the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202(b).  Dow Jones also brings claims for breach of contract and violation of Hong Kong copyright law.

        Before the Court is Juwai's motion to dismiss.  Juwai argues primarily that it is beyond the territorial scope of United States copyright law.  For the reasons set forth below, the motion will be granted in part and denied in part.

I.    BACKGROUND

    A.    <u>Factual Background</u>

        The well-pleaded facts recounted below are taken from the Amended Complaint and assumed to be true for the purposes this motion.  <u>In re Elevator Antitrust Litig.</u>, 502 F.3d 47, 50 (2d Cir. 2007).  (Dkt. 30) ("Complaint" or "Compl.")

Dow Jones & Company, Inc. is a Delaware corporation with a principal place of business in New York. (Compl. ¶ 9)  The company owns and operates multiple news publications, including The Wall Street Journal, Mansion Global, Barron's, and MarketWatch. (Id. ¶¶ 14–18)  These publications have worldwide reach and—with rare exceptions—Dow Jones is the exclusive distributor of their news content. (Id. ¶¶ 3–4)  Where Dow Jones does license reprint rights, those are sold on a per-article basis. (Id. ¶ 19)  The viability of this news network depends on the copyright protection afforded its publications. (Id. ¶ 3)

Juwai Ltd. is a subsidiary of Juwai IQI Holdings and is principally based in Hong Kong and Shanghai. (Id. ¶ 10)  Juwai operates Juwai.com, a website that markets millions of real estate listings—including listings in New York—and publishes news and information about global real estate markets. (Id.)  Juwai is targeted to a Chinese-speaking audience. (Id. ¶ 20)  This audience includes Chinese-speaking homebuyers located in the United States, and the Juwai website has displayed over one million listings located in the United States. (Id. ¶¶ 22–23)  Juwai's website says that it "connects" with Chinese buyers living outside of mainland China and who are looking at domestic properties located in the country where they live. (Id. ¶ 23)  It illustrates this premise with an image of the United States. (Id.)  Dow Jones expects discovery to confirm that Juwai reaches many readers in the United States, including both prospective homebuyers and real estate professionals hoping to market to Chinese-speaking homebuyers. (Id. ¶ 25)

Juwai is alleged to have actively targeted the United States and New York markets served by Dow Jones.  Juwai has partnered in the past with United States real estate firms—such Sotheby's International Realty, the Corcoran Group, and Berkshire Hathaway HomeServices—to market United States properties to visitors to its website. (Id. ¶ 30)  Juwai

and Dow Jones share some New York-based clients as key customers.  (Id. ¶ 31)  Juwai has

attempted to hire for a "Business Development Manager" position located in the New York City

area.  (Id. ¶ 33)

The Complaint alleges that Juwai has reproduced without authorization over one

hundred articles from The Wall Street Journal, MarketWatch, and Mansion Global.  (Id. ¶ 35)

Many—though not all—of these articles registered by Dow Jones with the United States

Copyright Office within 90 days of their publication.  (Id. ¶ 45)  On Juwai's website the articles

have been either reproduced verbatim or translated from the original into Chinese.  (Id. ¶ 37)  In

some instances, the name of the original author and/or the original English-language headlines

have been omitted.  (Id. ¶ 49)  Although Juwai had previously expressed interest in partnering

with Dow Jones regarding its publications, it never obtained a license to republish copyrighted

material.  (Id. ¶¶ 32, 36)

The Complaint alleges that Juwai obtained Dow Jones's content directly from its

websites, or alternately induced a third party to do so.  (Id. ¶ 6)  This action by Juwai or that third

party violated the subscriber agreements and terms of use for those websites.  (Id.)  Juwai also

stripped the Dow Jones content of its original copyright management information, adding its own

copyright management information to give the impression that the content belonged to Juwai.

(Id. ¶¶ 7, 47–50)  Juwai continued displaying this content until Dow Jones issued a cease-and-

desist letter in August 2019.  (Id. ¶ 43)

The Complaint alleges that Juwai distributed the content on its website—at least

in part—by means of servers located in the United States.  Juwai uses the CloudFront content

delivery service from Amazon Web Services.  (Id. ¶ 54)  CloudFront operates to reduce latency

and increase transfer speeds for visitors to a website.  (Id.)  It does this by means of a global

network of "edge servers" providing cached content to users based on their location; therefore, a United States visitor to a CloudFront-supported website—such as juwai.com—will likely be served content from a server based in the United States. (Id.) The Complaint alleges that the content received from juwai.com has been traced to CloudFront servers in Seattle, Washington and Chicago, Illinois. (Id. ¶ 55)

     B.    Procedural History

Dow Jones filed its original complaint August 30, 2021, which stated three claims for relief. (Dkt. 1) It subsequently filed an Amended Complaint that added additional factual allegations and a claim for relief under Hong Kong law. (Dkt. 30) The Amended Complaint accordingly states four claims for relief: (1) copyright infringement under the Copyright Act for those of its infringed works that were registered; (2) violation of the DMCA as to all infringed works; (3) copyright infringement under the law governing Hong Kong as to all infringed works; and (4) breach of contract, or alternatively, tortious interference with a contractual relationship regarding the terms of use on its websites.

Dow Jones seeks both actual and statutory damages, costs and attorney's fees, and injunctive relief. (See, e.g., Compl. ¶¶ 66–68, 78–80) Juwai moves to dismiss each count of the Complaint for failure to state a claim on which relief can be granted under Rule 12(b)(6), Fed. R. Civ. P. (Dkt. 37)

II.    LEGAL STANDARD FOR MOTION TO DISMISS UNDER RULE 12(B)(6)

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). In assessing the sufficiency of a pleading, a court must disregard legal conclusions, which are not entitled to the

presumption of truth.  Id.  Instead, the Court must examine the well-pleaded factual allegations

and "determine whether they plausibly give rise to an entitlement to relief."  Id. at 679.  The

Court is instructed to "construe the complaint liberally," to "accept[] all factual allegations in the

complaint as true," and to "draw[] all reasonable inferences in the plaintiff's favor."  Palin v.

New York Times Co., 940 F.3d 804, 809 (2d Cir. 2019) (brackets and internal quotation marks

omitted).  "A complaint is also deemed to include any written instrument attached to it as an

exhibit, materials incorporated in it by reference, and documents that, although not incorporated

by reference, are integral to the complaint."  Cohen v. Rosicki, Rosicki & Assocs., P.C., 897

F.3d 75, 80 (2d Cir. 2018) (internal quotation marks omitted).

III.    DISCUSSION

    A.    Copyright Act and DMCA Claims

        The Complaint alleges that Juwai has committed direct copyright infringement as

to Dow Jones's registered works.  See Copyright Act of 1976, 17 U.S.C. § 106.  (Compl. ¶ 63)

"To state a claim for copyright infringement, a plaintiff must allege both (1) ownership of a valid

copyright and (2) infringement of the copyright by the defendant."  Spinelli v. Nat'l Football

League, 903 F.3d 185, 197 (2d Cir. 2018) (internal quotation marks omitted).  "Copyright

infringement is a strict liability offense in the sense that a plaintiff is not required to prove

unlawful intent or culpability."  EMI Christian Music Grp., Inc. v. MP3tunes, LLC, 844 F.3d 79,

89 (2d Cir. 2016).  A list of allegedly infringed registered works is attached as Exhibit B to the

Complaint.  (Dkt. 30-2)

        The Complaint also alleges contributory and vicarious liability to the extent non-

parties were involved in authoring the infringing posts on Juwai's website.  (Compl. ¶ 64)  To

succeed on a contributory copyright infringement claim, a plaintiff must show (1) direct

infringement by a third party, (2) that the defendant had "knowledge of the infringing activity,"

(3) and that the defendant "materially contribute[d] to" the third party's infringement. Smith v.

BarnesandNoble.com, LLC, 143 F. Supp. 3d 115, 124 (S.D.N.Y. 2015) (internal quotation marks

omitted). "[T]o state a claim for vicarious infringement, a plaintiff need only allege that a

defendant has declined to exercise the right and ability to supervise or control the infringing

activity and enjoys a direct financial benefit from the infringing activity." Rams v. Def Jam

Recordings, Inc., 202 F. Supp. 3d 376, 385 (S.D.N.Y. 2016) (citing Metro–Goldwyn–Mayer

Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 930 (2005)).

As to the complete list of infringed works, the Complaint alleges that Juwai has

violated the DMCA by removing and/or altering their copyright management information and

then redistributing them with knowledge of the alterations. See 17 U.S.C. § 1202(b). (Compl.

¶¶ 69–80) "[T]o state a valid claim under subsection 1202(b), a plaintiff must allege 1) the

existence of [copyright management information] on the products at issue; 2) removal and/or

alteration of that information; and 3) that the removal and/or alteration was done intentionally."

Aaberg v. Francesca's Collections, Inc., 17 Civ. 115 (AJN), 2018 WL 1583037, at *6 (S.D.N.Y.

Mar. 27, 2018) (citing BanxCorp v. Costco Wholesale Corp., 723 F. Supp. 2d 596, 609

(S.D.N.Y. 2010)). The full list of infringed works is attached as Exhibit A to the Complaint.

(Dkt. 30-1)

With limited exceptions discussed below, Juwai does not dispute that the

Complaint has adequately stated the above elements. It instead moves to dismiss the copyright

law claims primarily on territorial grounds. Juwai argues that as a Chinese company publishing

a Chinese-language website it is beyond the reach of United States copyright laws.

1.      Extraterritorial application of copyright law

"It is well established that copyright laws generally do not have extraterritorial

application." Update Art, Inc. v. Modiin Pub., Ltd., 843 F.2d 67, 73 (2d Cir. 1988); see

Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen, 14 Civ. 1112 (VSB), 2015 WL

13840969, at *11 (S.D.N.Y. Mar. 16, 2015) (determining that "activities that occur entirely

outside of the United States . . . do not violate the DMCA").  "But if a defendant (1) commits a

predicate infringing act . . . in the United States, and (2) the act permits further reproduction

abroad, the defendant might be liable for related infringing acts occurring outside the country."

Craig v. UMG Recordings, Inc., 380 F. Supp. 3d 324, 331 (S.D.N.Y. 2019); see Update Art, 843

F.2d at 73.  Ultimately, "[f]ailure to adequately allege relevant domestic conduct" operates as "a

failure to allege sufficient facts to satisfy an element" of a copyright claim.[1] Noland v. Janssen,

17 Civ. 5452 (JPO), 2019 WL 1099805, at *5 n.5 (S.D.N.Y. Mar. 8, 2019).

The means by which a webpage arrives on a viewer's device introduces

complexity in limiting the extraterritorial application of United States copyright law.  Regardless

of where a website is hosted, whenever a user located in the United States navigates their

browser to webpage, a local copy of that page's data is created on the user's device in the United

States. See, e.g., Intell. Rsrv., Inc. v. Utah Lighthouse Ministry, Inc., 75 F. Supp. 2d 1290, 1294

(D. Utah 1999).  Some courts have therefore found the simple act of opening a website by a user

in the United States to constitute copyright infringement. Id. ("And in making a copy, even a

temporary one, the person who browsed infringes the copyright.").  But "[t]he adoption of a rule

---

[1] Some district courts have held that they lack subject-matter jurisdiction to address copyright infringement that
occurs outside of the United States. See Levitin v. Sony Music Ent., 101 F. Supp. 3d 376, 384 (S.D.N.Y. 2015)
("[D]istrict courts do not have subject matter jurisdiction over infringement occurring outside of the United
States.").  But the Supreme Court has held that extraterritorial application is "a merits question," not one of subject-
matter jurisdiction. Morrison v. Nat'l Australia Bank Ltd., 561 U.S. 247, 254 (2010).

that would give rise to a copyright claim against a foreign actor solely on the basis of the fact that a U.S. copyrighted image was posted on the internet . . . would undermine the extraterritorial limitations on U.S. copyright law." State St. Glob. Advisors Tr. Co. v. Visbal, 431 F. Supp. 3d 322, 339 (S.D.N.Y. 2020) (citing 7 Patry on Copyright § 25:86.20); accord IMAPizza, LLC v. At Pizza Ltd., 334 F. Supp. 3d 95, 119 (D.D.C. 2018) ("The Court is somewhat skeptical that copyright infringement occurs when someone merely downloads an image from a reputable, publicly available website.").

Cognizant of these concerns, courts in this district have held that it is an insufficient allegation of direct infringement to simply state "that a copyrighted work is made available online to United States users." Grecco v. Age Fotostock Am., Inc., 21 Civ. 423 (JSR), 2021 WL 3353926, at *3 (S.D.N.Y. Aug. 2, 2021). Plaintiffs seeking to bring copyright claims for works found on foreign websites are required to allege additional "plus factors" beyond mere online availability.[2] State Street compiled a set of factors relied upon in prior cases, which "included (1) the direction of copyrighted material into the United States, (2) when foreign acts are intended to, and do, have an effect within the United States, and (3) the uploading of copyrighted materials to servers located in the United States." 431 F. Supp. 3d at 340 (citations and internal quotation marks omitted). At minimum, the Complaint has plausibly alleged the third of these factors and has adequately stated its domestic copyright claims.

---

[2] The parties discuss United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc., 216 F. Supp. 2d 198 (S.D.N.Y. 2002), where an extraterritoriality argument was dismissed as "border[ing] on the frivolous" because the website was accessible in New York. 216 F. Supp. 2d at 225. The Court is persuaded by the analysis in State Street that—given the brevity of its treatment of the issue—"United Feature has limited persuasive authority." State St., 431 F. Supp. 3d at 339. Additionally, the court in United Feature was "satisfied" with representations that counsel could show "alleged copyright infringement had an effect within the United States," which comports with the second State Street plus factor. 216 F. Supp. 2d at 225.

The Complaint alleges that Juwai.com and its content—including the allegedly copied articles—are served to users by the CloudFront content delivery service, or content delivery network ("CDN"). CloudFront increases website responsiveness and speed by storing copies, or caches, of a website's content on "edge servers" located across the globe. (Compl. ¶ 54) Users accessing a CloudFront-supported website like juwai.com will likely receive their data from the closest edge server.[3] The juwai.com website has been repeatedly traced to servers in Seattle and Chicago. The Complaint alleges that it is therefore likely that each of the infringing articles was uploaded and stored on a server in the United States as well. (Id. ¶¶ 54–55)

Where a complaint alleges "that Defendants caused a copy of" an infringing work "to be made on . . . servers in the United States," the complaint "plainly alleges an act of direct infringement in the United States" by some entity. Richardson v. Complex Media, Inc., 20 Civ. 6201 (JSR), 2021 WL 230192, at *2 (S.D.N.Y. Jan. 22, 2021). In the context of a CDN, courts have treated the customer uploading the content as the direct infringer and the CDN as a possible contributory infringer. See, e.g., Waidhofer v. Cloudflare, Inc., 2021 WL 8532943 at *2–7 (C.D. Cal. Sept. 29, 2021) (granting CDN-operator's motion to dismiss direct copyright infringement claim but denying dismissal of contributory copyright infringement claim where the "pages featuring Plaintiffs' work" were stored by a customer on the CDN). At least one court has applied this logic in a situation echoing this case, holding that—as to a foreign, extraterritorial entity—to "the extent cache copies of" infringed works "have been stored on" a CDN-operator server in the United States, "the creation of those copies would be an act of direct infringement"

---

[3] Cf. Will Co. v. Lee, 47 F.4th 917, 925 (9th Cir. 2022) (describing a "content delivery network" as "a distributed network of servers covering a particular geographic area, which permits users to access the site from any server in the network, not just the host server, and thus decreases the distance between users and the server," thereby "allow[ing] persons within the area covered by the CDN to access the site more quickly")

within the United States by the original website operator.  ALS Scan, Inc. v. Cloudflare, Inc.,
2017 WL 11579039, at *7 (C.D. Cal. June 1, 2017).  The Court concludes that Dow Jones has
adequately stated a claim of direct copyright infringement by alleging Juwai's website used the
CloudFront servers to store and distribute copies of the infringed works in the United States.

   Juwai argues that the use of the CloudFront servers does not satisfy the "plus
factor" described in State Street because "in this day and age—'when large internet companies
locate servers across the globe'—it 'is not reasonable' to infer that the works allegedly posted by
a company like Juwai used servers located in the United States."  Dkt. 38 at 8–9 (quoting State
St., 431 F. Supp. 3d at 338–39)  But unlike State Street, this inference is not necessary here—
Dow Jones has specifically alleged that Juwai used servers located in the United States.

   State Street involved a group of Australian firms uploading allegedly infringing
photographs to Instagram and other social media accounts.  431 F. Supp. 3d at 338.  The
complaint alleged that the firms' communications were "accessible" from the United States but
did "not allege that the images posted by the Australian firms used servers located in the United
States."  Id. at 338–39.  In an era "when large internet service companies locate servers across
the globe," and in the absence of an express allegation in the complaint, the court refused to draw
an inference regarding use of a server based in the United States.  Id. at 339.  Cases applying
State Street have, in contrast, denied dismissal where use of servers in the United States has been
specifically alleged in the complaint.  See Richardson, 2021 WL 230192, at *1 (allowing claim
where complaint alleged UK-based defendant caused a copy of a photo "to be made on
Instagram's servers in the United States"); Grecco, 2021 WL 3353926, at *4 (finding "plus
factor" satisfied where complaint alleged the offending website was hosted in the United States).
This matches the treatment in the out-of-circuit cases upon which State Street relied.  See State

St., 431 F. Supp. 3d at 340 (citing Shropshire v. Canning, 809 F. Supp. 2d 1139, 1146 (N.D. Cal. 2011) ("[A]ccording to the allegations in the [complaint], Defendant's direct action led to the creation of a copy of the [infringing] video on YouTube's servers in California, and to the subsequent viewing of the video by potentially thousands in the United States.")) The instant Complaint similarly alleges the use of servers in the United States and is distinguishable from the complaint in State Street on that basis.

Juwai's remaining arguments regarding the server allegations are unavailing. Parsing the use of passive voice of the Complaint, Juwai argues that the Complaint fails to allege that Juwai itself uploaded any content. (Dkt. 40 at 2) Instead, Dow Jones states only that the website "is made available to users through Cloudfront.net" and that "that infringing works . . . were uploaded" in the United States. The clear inference of these allegations in the full context of the Complaint—an inference the Court is required to make in favor of the non-moving party—is that Juwai was the relevant actor responsible for providing its content to its own content distribution service. It was Juwai's choice to use this service.

Juwai additionally argues that the functional operation of the CDN relieves it of any possible liability because the use of servers in the United States is "triggered by the location of the viewer and not by any action of Juwai." Dkt. 40 at 2. But this is immaterial. The Complaint alleges that Juwai engaged a service that maintained copies of the infringing content on servers in the United States. Juwai is not absolved of its agency regarding this action because customers outside the United States might have been served content from other servers.

At the motion to dismiss stage, the Court is bound by the plausible allegations in the Complaint. To the extent Juwai contests the allegations regarding the location and operation of its content hosting and distibution, it will have a future opportunity to explore these issues.

Compare Grecco, 2021 WL 3353926, at *4 (denying motion to dismiss because complaint alleged that the defendant "maintained the website that displayed and distributed the Photos from within the United States"), with Grecco v. Age Fotostock Am., Inc., 21 Civ. 423 (JSR), 2021 WL 4555599, at *6 (S.D.N.Y. Oct. 5, 2021) (granting summary judgment after plaintiff conceded the website was "owned, operated, and controlled by" parent company "in Spain").

        2.     Unregistered Copyright Claims

Juwai argues that Dow Jones has failed to state a claim for copyright infringement as to the remaining unregistered works and urges that the "copyright infringement claims based on the 75 unregistered works listed in Exhibit A to the complaint" should be dismissed with prejudice. Dkt. 38 at 10–11. But there are no such claims to dismiss. The Complaint seeks relief under the Copyright Act regarding registered works, not unregistered works. (Compl. ¶¶ 60–68) The Complaint includes the unregistered infringing works because they are relevant to the other alleged violations, not the Copyright Act violations. (See, e.g., id. ¶¶ 69–80)

Juwai also urges that Dow Jones should not be allowed to amend to add copyright claims for any unregistered works that subsequently receive registrations. (Dkt. 38 at 10) Yet, there is nothing before the Court showing that Dow Jones has received any registrations not alleged in the Complaint, and thus the issue is not ripe. Similarly, Juwai's argument that statutory damages and attorney's fees should be denied where registration is found to be dilatory involves as-yet-unmade factual determinations and is accordingly premature. (Id. at 11)

    B.     Breach of Contract and/or Tortious Interference

Dow Jones requires users of its websites to accept the terms of service ("TOS") for each website. (Compl. ¶ 97) The TOS are alleged to be a valid and enforceable contact, and it is alleged that they prohibit the republishing or distribution of the website's content without the

consent of Dow Jones.  (Id. ¶¶ 98–99)  Dow Jones asserts that there are two possible ways Juwai

obtained the infringing works: (1) Juwai, or its agent, accessed the website directly, which would

have required accepting the TOS, or (2) Juwai intentionally induced a third-party to violate their

own agreement as to the TOS.  (Id. ¶¶ 101–02)  The breach of contract and tortious interference

claims reflect these two possibilities.  Juwai argues that these state law claims are duplicative of

Dow Jones's copyright claim and are therefore preempted by the Copyright Act.  The Court

agrees and both claims will be dismissed.

Section 301 of the Copyright Act expressly preempts rights under state law that

are equivalent to rights under the Copyright Act.  17 U.S.C. § 301(a).  This "statutory

preemption" aims "to ensure a nationwide, uniform federal copyright system, ousting the states

from imposing any control of the area."  In re Jackson, 972 F.3d 25, 42 (2d Cir. 2020).  Where a

district court determines that a state law claim has been preempted by the Copyright Act, "the

court must then dismiss the claim for failing to state a cause of action."  Briarpatch Ltd., L.P v.

Phoenix Pictures, Inc., 373 F.3d 296, 309 (2d Cir. 2004).

The Second Circuit has read this statute as providing a two-prong test for

preemption: (1) the "subject matter" requirement, and (2) the "general scope" requirement.  In re

Jackson, 972 F.3d at 42–43.  The first prong—the subject-matter requirement—evaluates

whether "the work" at issues falls "within the subject matter of copyright."  Id. at 42 (internal

quotation marks omitted).  Dow Jones concedes that its articles satisfy this prong of the test.

(Dkt. 39 at 16)

The second prong—the general scope, or "equivalence," requirement—assesses

whether the state law rights being asserted regarding the work "are equivalent to those within

copyright's general scope" as laid out in section 106.  In re Jackson, 972 F.3d at 43.  This

-13-

requirement "is satisfied only when the state-created right may be abridged by an act that would, by itself, infringe one of the exclusive rights provided by federal copyright law." Briarpatch, 373 F.3d at 305. Accordingly, "the state law claim must involve acts of reproduction, adaptation, performance, distribution or display" for preemption to apply. Id.

This inquiry begins by asking "whether an extra element is required instead of or in addition to" the elements of a copyright infringement claim; however, "not all 'extra elements' are sufficient to remove the claim from the 'general scope' of copyright." In re Jackson, 972 F.3d at 43 (internal citations omitted). "The critical inquiry is whether such extra elements of the state law claim beyond what is required for copyright infringement 'change the nature of the action so that it is qualitatively different from a copyright infringement claim.'" Id. at 43–44 (brackets omitted) (quoting Comput. Assocs. Int'l., Inc. v. Altai, Inc., 982 F.2d 693, 716 (2d Cir. 1992)). "An action will not be saved from preemption by elements which alter the action's scope but not its nature." Id. at 44 (ellipsis and internal quotation marks omitted). "[E]lements such as awareness or intent" will accordingly not save a claim from preemption. Computer Assocs. Int'l, 982 F.2d at 717 (internal quotations omitted).

There has been disagreement among the district courts in this Circuit about how this "elements" test applies to a breach of contract claim, with courts reaching divergent conclusions regarding "whether the promise inherent in every contract is sufficient to establish an extra element." Canal+ Image UK Ltd. v. Lutvak, 773 F. Supp. 2d 419, 441–43 (S.D.N.Y. 2011) (internal quotation marks omitted) (compiling cases for both premises). But in a recent summary order the Second Circuit applied the above preemption principles to a breach of contract dispute comparable to the claim in this case. See ML Genius Holdings LLC v. Google LLC, No. 20-3113, 2022 WL 710744 (2d Cir. Mar. 10, 2022).

-14-

ML Genius affirmed the district court's holding that the breach of a website's TOS "regarding the copying and reproduction" of its content was preempted by the Copyright Act. 2022 WL 710744, at *4 (internal quotation marks omitted). The right the plaintiff had been "seek[ing] to protect [was] coextensive with an exclusive right already safeguarded by the Act— namely, control over reproduction and derivative use of copyrighted material." Id. (internal quotation marks omitted). The panel rejected the theory that breach of contract claims escaped preemption through the element of "mutual assent and valid consideration," stating that "a per se rule that all breach of contract claims are exempt from preemption" was at odds with the "holistic" approach required by precedent. Id.

ML Genius is non-precedential, but this Court finds its reasoning and conclusion to be persuasive. The Dow Jones "Terms of Use" concern the right to "use, sell, publish, distribute, retransmit or otherwise provide access" to its articles. Compl. ¶ 99. This is the same right it seeks to protect through its copyright claim, and both copyright law and the contract are violated by the same act of reproduction. The Court concludes that Dow Jones's breach of contract claim is preempted.

Dow Jones argues that the "extra element" test has been met here because the contract required a promise from Juwai that applied worldwide. (Dkt. 39 at 17) It quotes Torah Soft Ltd. v. Drosnin for the proposition that where "federal copyright law does not apply, it cannot preempt" breach of contract claims. 224 F. Supp. 2d 704, 716 (S.D.N.Y. 2002). But as discussed above, federal copyright law does apply here, so that syllogism fails.

Further, the Court is not convinced that the possible extraterritorial scope of the contract right at issue changes its "nature" such that it is no longer an "equivalent" right. The Court is instructed to "take a restrictive view of what extra elements transform an otherwise

-15-

equivalent claim into one that is qualitatively different from a copyright infringement claim." Canal+ Image UK Ltd., 773 F. Supp. 2d at 441 (quoting Briarpatch, 373 F.3d at 306.).  And "elements which alter the action's scope but not its nature" are insufficient.  In re Jackson, 972 F.3d at 44.

As a corollary, the tortious interference with contractual relationship claim is preempted as well.  The Complaint explicitly pleads this claim in the alternative to the breach of contract claim, and it seeks to protect the same contract right.  (Compl. ¶¶ 94–103)  The only additional elements are knowledge of the contract and intentional procurement of the breach by another person.  See Rich v. Fox News Network, LLC, 939 F.3d 112, 126–27 (2d Cir. 2019) (listing elements of tortious interference claim).  (See Dkt. 39 at 18–19)  But again, "elements such as awareness and intent alter the action's scope but not its nature."  Computer Assocs. Int'l, 982 F.2d at 717 (internal quotations omitted).

C.    Infringement under Hong Kong Law

Dow Jones also asserts a claim for copyright infringement under Hong Kong law. (Compl. ¶¶ 81–93)  Asserting that Hong Kong does not require registration to enforce copyright claims, Dow Jones pleads both direct and secondary liability as to all infringed works.  (Id. ¶¶ 86, 88–89)  Echoing the DMCA claim, the Complaint also alleges that Juwai has violated the WIPO Copyright Treaty—which is operative under Hong Kong law—by removing the rights management information from its articles.  (Id. ¶ 90)  Juwai urges the Court to dismiss the Hong Kong copyright law claim on the grounds of forum non conveniens.[4]

---

[4] Juwai first urges the Court to simply decline supplemental jurisdiction over the Hong Kong law claims.  (Dkt. 38 at 17–22)  But the Complaint pleads this claim under this Court's diversity jurisdiction.  (Compl. ¶ 82)

"The doctrine of forum non conveniens is a discretionary device permitting a court in rare instances to dismiss a claim even if the court is a permissible venue with proper jurisdiction over the claim." Carey v. Bayerische Hypo-Und Vereinsbank AG, 370 F.3d 234, 237 (2d Cir. 2004) (internal quotation marks omitted).  It may be applied where (1) "an alternative forum has jurisdiction to hear a case, and when trial in the chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience, or [2] when the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems." Id. (brackets, ellipses, and internal quotation marks omitted).  "[T]he central focus of the forum non conveniens inquiry is convenience." Aenergy, S.A. v. Republic of Angola, 31 F.4th 119, 126 (2d Cir. 2022), cert. denied, 143 S. Ct. 576 (2023) (internal quotation marks omitted).  "The decision to dismiss a case on forum non conveniens grounds lies wholly within the broad discretion of the district court." Iragorri v. United Techs. Corp., 274 F.3d 65, 72 (2d Cir. 2001) (internal quotation marks omitted).

Courts in this Circuit apply a three-step analysis to a motion seeking dismissal on grounds of forum non conveniens. Aenergy, S.A., 31 F.4th at 128.  The Court must "(1) determine the degree of deference properly accorded the plaintiff's choice of forum; (2) consider whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute; and (3) balance the private and public interests implicated in the choice of forum." Id. (internal quotation marks omitted).  Defendant Juwai bears the burden of demonstrating that this analysis favors dismissal. Id.

"[F]orum non conveniens is most commonly applied in the context of whether to dismiss an entire action, as opposed to merely dismissing fewer than all of the claims."

DigitAlb, Sh.a v. Setplex, LLC, 284 F. Supp. 3d 547, 561 (S.D.N.Y. 2018).  But the Second

Circuit has held that the doctrine "necessarily requires great flexibility," and that "[d]epending

upon the facts of the particular case, a district court may dismiss part of a lawsuit while deciding

the merits of other issues."  Scottish Air Int'l, Inc. v. British Caledonian Grp., PLC, 81 F.3d

1224, 1234 (2d Cir. 1996); see Siswanto v. Airbus Americas, Inc., 2016 WL 7178460, at *14

(N.D. Ill. Dec. 9, 2016) ("Dismissal of some, but not all, defendants, claims, or even plaintiffs

upon forum non conveniens grounds is not atypical.") (cataloguing cases); 17 Moore's Federal

Practice - Civil § 111.93 (2023) ("Although it is not frequently done, a court properly may retain

some claims in an action and dismiss others on forum non conveniens grounds."); see e.g., Mars

Inc. v. Kabushiki-Kaisha Nippon Conlux, 24 F.3d 1368, 1375–76 (Fed. Cir. 1994) (indicating

viability of forum non conveniens dismissal of Japanese patent law claim despite presence of

claims under United States patent law); HSBC Bank (Uruguay) S.A. v. Seaboard Corp., 2022

WL 4447416, at *1 (D. Kan. Sept. 23, 2022) (allowing promissory estoppel claim to survive

where other claims were dismissed on forum non conveniens grounds).

   At the outset, the Court notes that the Hong Kong claims are not at the heart of

this case.  They were first added in the Amended Complaint and are pleaded in the alternative to

Dow Jones's domestic copyright claims "in the event the Court determines that the territorial

jurisdiction of the United States copyright laws does not extend to the acts" underlying its

domestic claims.  (Compl. ¶ 82)

   On the first step, a plaintiff's choice to sue in its home forum "should be given

great deference" because that choice "is presumed to be convenient."  Iragorri, 274 F.3d at 71.

As Dow Jones has its principal place of business in New York, the analysis begins with the

strong presumption in favor of its choice of this forum.  But a plaintiff filing suit in its home

forum is not an automatic bar to dismissal; the presumption is not absolute and may be rebutted. Id. "A court considering a motion for dismissal on the ground of forum non conveniens does not assign talismanic significance to the citizenship or residence of the parties, and there is no inflexible rule that protects U.S. citizen or resident plaintiffs from having their causes dismissed for forum non conveniens." Wallert v. Atlan, 141 F. Supp. 3d 258, 280 (S.D.N.Y. 2015) (quoting Pollux Holding Ltd. v. Chase Manhattan Bank, 329 F.3d 64, 73 (2d Cir.2003)). "[I]f the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper." Iragorri, 274 F.3d at 71 (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 256 n.23 (1981)).

Second, the Court must consider whether there is an adequate alternative forum. "An alternative forum is adequate [1] if the defendants are amenable to service of process there, and [2] if it permits litigation of the subject matter of the dispute." Aenergy, S.A., 31 F.4th at 130 (internal quotation marks omitted). Juwai asserts that Hong Kong meets these requirements. Dow Jones makes no contrary argument, and the Court concludes that Hong Kong is an adequate alternative forum to hear the Hong Kong law claims.

The final step requires balancing private and public interest factors and deciding between the chosen and the alternate forum. Iragorri, 274 F.3d at 73. The private interest factors "include 'the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.'" Id. at 73–74 (quoting Gulf Oil Corp v. Gilbert, 330 U.S. 501, 508 (1947)). When assessing the public interest, courts "consider administrative difficulties associated with court congestion; the unfairness of imposing jury duty

on a community with no relation to the litigation; the interest in having localized controversies decided at home; and avoiding difficult problems in conflict of laws and the application of foreign law." Aenergy, S.A., 31 F.4th at 133 (internal quotation marks omitted). "The need to apply foreign law favors dismissal," though "this factor alone is not sufficient to warrant dismissal when a balancing of all relevant factors shows that the plaintiff's chosen forum is appropriate." Piper Aircraft, 454 U.S. at 260 n.29.

The private factors weigh in favor of the alternate forum. One the one hand, there is a benefit to resolving this claim in the same proceeding as the others,[5] and Dow Jones argues that the locus of its injury is in New York. (Dkt. 39 at 14) But its alleged injury in the United States is addressed by the claims brought under United States law. The locus of its injuries under Hong Kong law will be within the territorial scope of those laws. The Court agrees with Juwai that the relevant facts and witnesses regarding its rights and injuries in Hong Kong are likely to be situated there, and the Hong Kong courts will be much better positioned to compel the cooperation and attendance of any needed witnesses. See U.S. Dep't of State, Bureau of Consular Affairs, Judicial Assistance Country Information, China, https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/China.html (last updated May 1, 2019) ("China does not permit attorneys to take depositions in China for use in foreign courts."). This is not a situation where a dismissal will force Dow Jones to litigate these claims across multiple international jurisdictions. Compare Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co., 145 F.3d 481, 492 (2d Cir. 1998)

---

[5] See Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co., 145 F.3d 481, 492 (2d Cir. 1998) ("A trial here promises to begin and end sooner than elsewhere, and would allow the parties to sort out their rights and obligations in a single proceeding.").

("Everything before us suggests that trial would be more 'easy, expeditious and inexpensive' in the district court than dispersed to 18 foreign nations."), and Levitin v. Sony Music Ent., 101 F. Supp. 3d 376, 393 (S.D.N.Y. 2015) (denying forum non conveniens dismissal where it would "splinter" the suit and plaintiff would be forced to pursue copyright claims "in nine foreign countries"), with Wallert, 141 F. Supp. 3d at 280 (noting existence of single alternate forum when dismissing foreign copyright infringement claims).

The public factors also weigh strongly in favor of a Hong Kong forum. While this Court can address questions of Hong Kong law, Hong Kong courts are plainly better suited to the task. This alone is a strong—though not dispositive—factor favoring dismissal. Juwai has also made the unrebutted argument that the contours of the Hong Kong laws in question are currently in flux, which further indicates that this Court may be a less capable forum in which to address these questions. (Dkt. 38 at 19) The jury burden points in the same direction: While it is perfectly fair to expect a New York jury to hear United States copyright law claims affecting the United States, having it apply Hong Kong law to facts relating to injuries outside the United States has significantly less connection to its community. This claim presents a dispute that is both "localized" to the Hong Kong forum and presents questions that are best handled by the Hong Kong courts.

Balancing these factors, the Court concludes that New York is a "genuinely inconvenient" forum for the Hong Kong law claims and that the Hong Kong forum would be "significantly preferrable." Despite the strong deference typically given to a plaintiff's choice of its home forum, the central question remains whether "a court abroad is the more appropriate and convenient forum for adjudicating the controversy." Levitin, 101 F. Supp. 3d at 391 (internal quotation marks omitted).

The Court will grant the motion to dismiss the Hong Kong law claims on the grounds of forum non conveniens.

IV.     CONCLUSION

Juwai's motion to dismiss is GRANTED with prejudice with respect to the breach of contract/tortious interference claim, GRANTED without prejudice with respect to the Hong Kong law claims, and DENIED as to the Copyright Act and DMCA claims.  (Dkt. 37)

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       March 17, 2023